J-A27030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF PETER S. WHITBY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: ROBERTA LAROCCA | No. 561 EDA 2018 |

Appeal from the Order Dated January 19, 2018
In the Court of Common Pleas of Montgomery County
Orphans' Court at No: 2011-X3807

BEFORE:  BOWES, and STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 22, 2019**

Appellant, Roberta LaRocca, appeals *pro se* from the January 19, 2018 order assessing surcharges against Appellant and her husband, Richard LaRocca ("Richard"), and imposing a constructive trust on property located at 78 West Indian Lane, Norristown, Montgomery County, Pennsylvania.  We affirm.

Appellant and Richard engaged in an elaborate scheme to misappropriate funds from the decedent, Appellant's stepfather Peter S. Whitby ("Peter").  The record reflects that the couple misappropriated nearly $1.5 million from Peter and spent it on lavish renovations to their home.  The trial court recited the pertinent facts:

> Peter S. Whitby (hereinafter "Peter") was in declining health and having difficulty managing his affairs when he named his step-daughter, [Appellant] and her then-husband Richard

LaRocca as co-agents under a power of attorney signed on July 11, 2006.

After the death of Peter on October 11, 2002, his son, Kenneth Whitby (hereinafter "Kenneth"), one of the co-executors of his estate, sought an order compelling [Appellant] and Richard to file an account with respect to their handling of Peter's assets. The former co-agents failed to file an account in accordance with the court's order dated June 6, 2012. On November 2, 2012, the court held both [Appellant] and Richard in contempt of that order.

[***]

There is more to be said about the procedural history of this matter. However, it is important to note at the outset that, during the course of this lengthy litigation initiated by Kenneth against [Appellant] and Richard, Roberta filed for divorce in the Montgomery County Court of Common Pleas, without assistance of counsel. Less than a year later, a judge of the Family Division granted the divorce and approved a property settlement agreement in which Richard agreed to transfer title to all of the real estate owned by the couple to [Appellant's] sole name. Thus, [Appellant] and Richard agreed effectively to render Richard judgment-proof, and to have another division of this court approve the retitling of their home. This action contravened the order entered by the Honorable Stanley R. Ott on January 10, 2014, which enjoined the transfer of the assets they owned pending the resolution of this litigation. In his testimony before the undersigned, Richard acknowledged that the marital settlement agreement regarding the ownership of their real property was signed after the date of Judge Ott's order. Richard also agreed that, despite the express terms of the marital property agreement, he and [Appellant] had a 'side agreement' regarding the ultimate distribution of certain of their assets, which he did not explain.

[***]

This court does not find credible or particularly relevant [Appellant's] explanation that, although she allows Richard to stay in the home, they are not husband and wife. More believable and congruous is a scenario whereby the parties obtained a sham divorce by proceeding *pro se* and entered into a sham property agreement while deliberately misleading the court and opposing

- 2 -

counsel for months regarding the fact that Richard continued to live in the marital home.

[***]

Kenneth, Kay [Peter's wife] and [Appellant] reached a stipulation that was filed with the court on January 8, 2016, regarding many of the relevant facts. By the start of the hearing, Richard, who was representing himself, had not agreed to the stipulation. However, during the hearings, Richard did agree and the stipulation was made a part of the record and introduced into evidence as Exhibit RO-32. The facts as stipulated are as follows:

- Peter died on January 5, 2011. He was survived by Kay, his wife of 27 years, and by five other children from a prior marriage. Peter's daughter, Elizabeth, renounced her right to serve as executrix of his estate. On May 20, 2011, Kenneth and Kay qualified as executors and received letters testamentary.

- Peter married Kay on June 4, 1983. Kay's children from her prior marriage include her daughter, [Appellant]. [Appellant] was married to Richard in 1986.

- Peter and Kay resided at Shannondell at Valley Forge ("Shannondell"), an assisted care facility located in Eagleville, Montgomery County, from early 2005 until Peter's death in 2011.

- On May 2, 2006, [Appellant] became Peter's agent under a limited power of attorney to conduct certain business for him related to litigation over Peter's interest in real property in Glenside known as 'Roberts Block.'

- On July 7, 2006, [Appellant] emailed attorney James Walker from the law firm of Hamburg Rubin Mullin Maxwell & Lupin (hereinafter 'Hamburg Rubin') that 'Rich and I will act as co-attorneys for Pete.' On July 11, 2006, Peter signed a durable general power of attorney appointing [Appellant] and Richard as his agents.

- 3 -

- As of July 11, 2006, Peter's and Kay's assets included, *inter alia*:

  - A brokerage account at AG Edwards held in Peter's name alone which then was valued at approximately $665,960.07;

  - An IRA and a SEP IRA held at Raymond James in Peter's name alone but of which Peter named Kay the sole beneficiary upon his death and which had a combined value of roughly $589,171;

  - A 'Gold Checking' account at Citizens Bank titled in Peter's and Kay's names as joint tenants with rights of survivorship, which had a value of approximately $27,997.00.

  - A Citizens Bank money market account titled in Peter's and Kay's names as joint tenants with rights of survivorship which had a value of approximately $79,177.00; and

  - An interest as mortgagee (in Peter's name only) in the Roberts Block property.

- On July 14, 2006, represented by Hamburg Rubin and with [Appellant] acting as his agent, Peter began mortgage foreclosure proceedings related to the Roberts Block property. [Appellant] verified the foreclosure complaint as agent. In this fiduciary capacity, [Appellant] also verified Peter's reply to new matter and counterclaim on October 13, 2006. In addition to the mortgage foreclosure actions, [Appellant] also acted as agent for Peter with respect to obtaining fire insurance and pursuing a claim following an August 2006 fire at the Roberts Block property. The Roberts Block litigation included three separate civil actions filed in the Court of Common Pleas of Montgomery County, Civil Division, at docket nos. 2006-20490, 2007-03112, and 2008-11763. On November 1, 2006, [Appellant] as 'P.O.A. for Peter Whitby' signed a 'Sworn Statement and Proof of Loss' relating to the fire claim. On November 6, 2006, [Appellant] submitted to an examination under oath

in connection with the claim. [Appellant] eventually consented to a settlement on behalf of Peter which resulted in the following payments:

- A check for $253,463.38 which Hamburg Rubin delivered to Richard on April 24, 2007, and which Richard deposited into Peter's and Kay's joint account at Citizen's Bank; and

- A check for $151,996 which Richard deposited into Peter's and Kay's joint account at Citizens Bank on December 11, 2008.

The stipulation set forth the following with regard to transfers from accounts in Peter's sole name and from those in joint names with Kay:

- Between January 10, 2007 and February 25, 2008, $682,404.84 was transferred from Peter's AG Edwards account in to Peter's and Kay's joint accounts at Citizens Bank.

- Between November 13, 2007 and October 20, 2008, $555, 657.21 was transferred from Peter's Raymond James IRAs to Peter's and Kay's joint accounts at Citizens Banks.

- Beginning in July 2006, substantial amounts were transferred from Peter's and Kay's joint accounts at Citizens Bank to Citizens Bank accounts ending in the numbers 3731 and 3723 in the name of Richard LaRocca.

- [Appellant's] signature, either in her individual capacity or as agent for Peter, does not appear on any checks or withdrawal slips used to effectuate the transfers from the Whitbys' joint account to the accounts ending in numbers 3731 and 3723.

- In addition to her involvement as agent for Peter in the Roberts Block civil actions, [Appellant] began signing checks payable to Peter's health care and assisted care providers, as his agent on April 26, 2010. (That the checks that [Appellant] as agent wrote to the health care aides and care providers were

- 5 -

for Peter's benefit is not disputed and these checks are not at issue in this litigation).

The objectants assert, and Richard does not deny, that after a copy of the power of attorney was provided to the investment advisors, Richard transferred Peter's investment funds to a joint account of Peter and [his wife] at Citizens Bank. There is no dispute that Richard also deposited into the Whitbys' account to two checks received with respect to the fire insurance litigation. As stipulated by the parties, and acknowledged by Richard, the transfers from assets belonging solely to Peter into the Whitbys' joint account totaled $1,642,521.43 between January 1, 2007 and December 11, 2008.

These transfers made by Richard as agent may be referred to as 'step one' of the scheme. Although the monies were transferred to a joint account of Peter and Kay, in which Richard and [Appellant] had no interest, the transfers are significant. It was established that Richard thereafter made the 'substantial' transfers from the Whitbys' joint accounts at Citizens Bank to his own accounts at Citizens Bank using his online profile. Richard's evasiveness and equivocation were evident in his attempt to deny that he made these transfers 'under the power of attorney.' [….] Richard directed the bank statements to be addressed to Peter but sent to 79 West Indian Lane, an address that [Appellant] used to receive mail but at which she advised that she did not reside. As a result of presenting himself to Citizens Bank as a fiduciary for Peter, Richard gained the authority to make transfers from these joint accounts, and exercised it, primarily, by logging in online. These online transfers may be considered 'step-two' of the scheme.

From January 2007 through February 2009, Richard took a total of $902,860.27 of Peter's funds from his joint accounts at Citizens Bank and placed the money in two Citizens Bank accounts in his own name[….]

From August 2007 through November 2010, Richard transferred at least an additional $592,200 of Peter's funds into his own accounts[….] Although counsel for the objectants assert that the total is even higher, there is no dispute that the bank records reflect transfers by Richard into accounts in his own name in the total amount of $1,432,060.27.

[***]

Richard, having misappropriated Peter's funds, next engaged in 'step three' of the scheme—using the funds for his and [Appellant's] extravagant home renovations in an effort to conceal his ill-gotten gains and defeat any party who would seek to recover Peter's funds. Richard used the funds in his bank accounts to spend more than $1 million on contractors and materials related to improvements at his and [Appellant's] home at 78 West Indian Lane over a period of two and a half years from September 2006 through March of 2009.

Finally, in 'step four' of the scheme, [Appellant] and Richard agreed to a sham divorce and to impoverish Richard by transferring their property to [Appellant] as part of their strategy to divest Richard of any assets that would otherwise be available to repay Peter's estate.

Trial Court Opinion, 1/19/18, at 1-10 (record citations omitted).

After the November 2, 2012 order holding Appellant and Richard in contempt, the orphans' court directed them to file an account on or before January 20, 2013. They failed to meet that deadline, but Richard filed an account on May 3, 2013, and Appellant filed an account on May 6, 2013. On January 10, 2014, the orphans' court filed an order forbidding Appellant and Richard to transfer any assets pending the outcome of this action. Appellant and Richard violated that order in their 2015 divorce proceedings. Kenneth filed objections to Appellant's account on June 28, 2013, and Kenneth and Kay filed supplemental objections to Appellant's account on August 31, 2016.[1] The orphans' court held nine days of hearings in December of 2016 and January of 2017.

---

[1] The matter apparently was drawn out by Appellant's and Richard's failure to cooperate with various discovery requests.

Appellant's *pro se* brief contains only her own self-serving account of the facts. She blames Richard for the wrongdoing and claims she was unaware of his activities. Appellant cites no law in support of her appellate arguments, and, for that reason alone, she cannot obtain relief on this appeal. ***In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012), ***appeal denied***, 56 A.3d 398 (Pa. 2012) ("We will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

Even were we to consider the merits, Appellant could not obtain relief. The governing standard is well settled:

> When an appellant challenges a decree entered by the [o]rphans' [c]ourt, our standard of review requires that we be deferential to the findings of the [o]rphans' [c]ourt.
>
> [We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

***In re Staico***, 143 A.3d 983, 987 (Pa. Super. 2016) (internal citations and quotation marks omitted), ***appeal denied***, 166 A.3d 1221 (Pa. 2017).

The evidence, as set forth extensively above, overwhelmingly refutes Appellant's assertion that she was unaware of Richard's misappropriation of

funds. In addition to the facts described above, we observe that Richard had been unemployed since 2004. Despite this, Appellant claims she did not question where Richard got the funds to pay for a seven-figure renovation to their home.

Because Appellant has not developed a legal argument, and because the record overwhelmingly fails to support her account of the facts, we affirm the orphans' court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/19